**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FRANK DREW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 11-CV-2938 |
| | ) | |
| ANTHONY RAMOS, *et al.*, | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Frank Drew, currently an inmate in the custody of the Illinois Department of Corrections ("IDOC") and incarcerated at the Menard Correctional Center, contends that he was subjected to unconstitutional conditions of confinement and denied medical care while at Stateville Correctional Center. Before the Court is Defendants' motion [92], which seeks summary judgment on the ground that Plaintiff failed to exhaust the administrative grievance remedies available to him, as required under PLRA § 1997e(a), because he skipped one or more steps in the grievance-filing process. For the reasons set forth below, the Court denies Defendants' motion [92] and will set this matter for a *Pavey* hearing to resolve numerous factual disputes. The Court also denies Defendants' motion to strike certain allegations of Plaintiff's Rule 56.1 statement of additional facts [101].

**I.     Background**

   **A.     Defendants' Motion to Strike**

Defendants have moved to strike certain paragraphs of Plaintiff's statement of additional facts. Defendants do not specifically state what they find objectionable about each particular

1

paragraph. Instead, Defendants speak broadly about hearsay and foundation issues, citing generally the entirety of Paragraphs 15, 21, and 23-31.

As the Court's standing order sets forth, motions to strike are disfavored: "Under ordinary circumstances, if a party contends that its opponent has included inadmissible evidence, improper argument, or other objectionable material in a Rule 56.1 submission, the party's argument that the offending material should not be considered should be included in its response or reply brief, not in a separate motion to strike." The Court is capable of disregarding unfounded assertions of fact found in Plaintiff's statement. Any statements or responses that contain legal conclusions or argument, are evasive, contain hearsay or are not based on personal knowledge, are irrelevant, or are not supported by evidence in the record will not be considered by the Court in ruling on Defendants' motion for summary judgment. Consistent with its obligations under the federal and local rules, the Court will rely only on material statements of fact which are both admissible and supported by the record compiled at the summary judgment stage. See Fed. R. Civ. P. 56(e); L.R. 56.1; see also *Davis v. Elec. Ins. Trs.*, 519 F. Supp. 2d 834, 836 (N.D. Ill. 2007); *Lawrence v. Bd. of Election Com'rs of City of Chicago*, 524 F. Supp. 2d 1011, 1014 (N.D. Ill. 2007). Defendants' motion to strike is denied [101].

**B.     Factual Background**

Plaintiff Frank Drew, currently an inmate in the custody of the Illinois Department of Corrections ("IDOC") and incarcerated at the Menard Correctional Center, contends that he was subjected to unconstitutional conditions of confinement and denied medical care while at Stateville Correctional Center. Plaintiff alleges that while he was incarcerated at Stateville, the following conditions of his confinement were in violation of his Eighth Amendment rights: 1) unhygienic conditions of the segregation unit; 2) filthy accommodations infested with

cockroaches; 3) cockroaches crawling "over his body making it extremely difficult if not impossible to sleep"; 4) stained mattress without padding; 5) linens stained with urine and feces; 6) the development of a skin infection due to bedding; 7) inadequate medical attention for skin infection other than ointment; 8) food consumed by and infested with cockroaches; 9) filthy showers covered in green slime-like material; 10) showers infested with cockroaches and unidentified flying insects; 11) filthy toilets infested with cockroaches; 12) denial of cleaning supplies; 13) denial of a pillow to sleep with; and 14) forced to shower in one-man showers in close proximity to another inmate. Plaintiff alleges that these conditions occurred from June 2009 through December 2009, while he was housed in the F-house segregation unit at Stateville.

During the relevant time period, Defendant Michael Randle was the Director of the IDOC, and Defendant Anthony Ramos was the Warden of Stateville. At some point, Ramos retired and was replaced by Defendant Marcus Hardy as the Warden of Stateville. Plaintiff alleges that Defendants Randle, Ramos, and Hardy implemented, enforced, and condoned the conditions described above. Plaintiff contends that Defendant Randle was responsible for the organization and supervision of all state-run correctional facilities in Illinois and that he had personal knowledge of the conditions of confinement imposed upon inmates at Stateville. Plaintiff further contends that Defendants Ramos and Hardy promulgated rules, regulations, policies, and procedures for the provision of certain medical care as wardens of Stateville and these policies were implemented by and through IDOC employees, including certain individual Defendant medical care providers who in turn had personal knowledge of the conditions of confinement.

During the relevant time period, Defendant Wexford Health Sources, Inc. was engaged in the business of providing medical care and treatment to inmates at Stateville. Defendant Dr.

Parthasarathi Ghosh was employed by Wexford to provide medical services to inmates at Stateville. According to Plaintiff, Defendant Dr. Ghosh was one of the treating physicians at Stateville and its Medical Director. Plaintiff contends that Wexford and Dr. Ghosh promulgated rules, regulations, policies, and procedures for the medical screening, medical treatment, and overall medical care of inmates at Stateville.

Defendants maintain that upon arrival at Stateville, inmates are given an orientation manual and oral presentation on the rules and regulations of the institution and the IDOC. This orientation includes the process for filing grievances. Counselors are available if the inmates have questions about the correctional center's policies and procedures. Plaintiff denies that he received an orientation on the grievance process. Plaintiff also maintains that he did not have regular access to a counselor or to the prison mail box when he was in segregation in F-House.

Plaintiff contends that he complained to a number of corrections officers about his conditions of confinement and then filled out a grievance form regarding the conditions of his cell, bedding, and mattress. According to Plaintiff, he placed the grievance between the double doors of his segregation cell approximately 9-10 days after he entered F-House in June 2009, which, according to Plaintiff, was the only way he could submit grievances while housed in F-House segregation. Plaintiff did not receive a response to the grievance. According to Defendants, the grievance was not pursued through the proper administrative channels because Plaintiff failed to place it in the prison mail box.

In early-to-mid December 2009, shortly before he was transferred out of F-House, Plaintiff maintains that he filled out a second grievance regarding the conditions of his confinement because he had not received a response to his first grievance. Plaintiff claims that he personally handed this grievance to grievance counselor Cynthia Harris, who never responded

4

to the grievance. On December 28, 2009, after he was transferred out of F-House to Stateville's E-House, Plaintiff maintains that he filled out a third grievance regarding his conditions of confinement that was substantially the same as the grievance that he provided to Harris earlier that month. Plaintiff maintains that he placed the third grievance in the E-House mail system. Defendants contend that Plaintiff never prepared or submitted the second grievance and never submitted the third grievance through the appropriate procedural channels.

When he did not receive a response to any of his grievances, on February 17, 2010, Plaintiff sent a letter to grievance counselor Jill Hosselton and attached a copy of the December 28, 2009 grievance. In the letter, Plaintiff stated that he had given Harris a grievance on his conditions of confinement "upon leaving F-House but she has not responded." He also asked Hosselton to "please respond" to his grievance so that he could "move [his] process along." He attached all of his grievances regarding his "last seg experience" and informed Hosselton that the grievance officers were "still not responding to them." Shortly thereafter, Plaintiff received a note from Hosselton attaching his "entire grievance file" and directing Plaintiff to review the file and note any problems. Plaintiff then reviewed the file provided by Hosselton and sent a reply letter to Hosselton that detailed the issues that he was having with numerous grievances. He mentioned the December 28, 2009 grievance regarding "his living conditions in F-House," stated that he never received a response from Harris, and asked Hosselton if she could "please aid [him] with this grievance." Hosselton responded and stated that she had "sent everything" to the ARB and that Plaintiff need to "just wait and see what they say." Plaintiff never received a response from the ARB regarding his grievance concerning his conditions of confinement while at F-House, nor did he receive any further direction from Hosselton regarding his grievance.

5

Shaun Bass, a grievance officer at Stateville, searched the grievance office files and did not find any grievance submitted by Frank Drew that complained about: (1) unhygienic conditions of the segregation unit; (2) filthy accommodations infested with cockroaches; (3) cockroaches crawling "over his body making it extremely difficult if not impossible to sleep"; (4) stained mattress without padding; (5) linens stained with urine and feces; (6) the development of a skin infection due to bedding; (7) inadequate medical attention for skin infection other than ointment; (8) food consumed by and infested with cockroaches; (9) filthy showers covered in green slime-like material; (10) showers infested with cockroaches and unidentified flying insects; (11) filthy toilets infested with cockroaches; (12) denial of cleaning supplies; (13) denial of a pillow to sleep with; and (14) forced to shower in one man showers in close proximity to another inmate, in the proper manner and according to department rules. However, Bass did find a lengthy letter received by the ARB on April 5, 2010, totaling over forty-five (45) pages and including over thirty (30) attachments. The letter was dated March 11, 2010, and addressed to Michael Randle, the Director of the IDOC. The letter contained various inquiries into the handling of his grievances, and one of more than thirty (30) exhibits attached included a four-page grievance dated December 28, 2009. The December 28, 2009 grievance addressed the litany of issues regarding Drew's conditions of confinement while at Stateville. Specifically, Plaintiff's grievance addressed issues with the cells, showers, toilet, linens, injuries, visits, recreation, food, and programs at Stateville. Drew had marked the box for the grievance to be reviewed on an emergency basis.

As part of their duties, correctional counselors are supposed to make rounds in the cell house, respond to inmate requests and grievances, and record those complaints into a database called Cumulative Counseling Summary. During the relevant time period at Stateville,

correctional counselors Duane Bowman, Cynthia Harris, and Kevin Whittington were assigned to Plaintiff. None of the Cumulative Counseling Summary notes taken by Duane Bowman, Cynthia Harris and Kevin Whittington regarding Frank Drew mention the 14 issues that Plaintiff has raised in this case. Additionally, Defendants' records indicate that grievances were submitted by Plaintiff in 2009 and 2010 to Bowman and Harris (for matters outside the 14 issues raised in this lawsuit), but there are no Cumulative Counseling Summary database entries corresponding to these dates or grievances activities.

Grievances are kept in the individual inmate's master file. Randy Stevenson, Clinical Services Supervisor at Lawrence Correctional Center, conducted a search of the master file of Drew for grievances pertaining to the 14 issues raised in this case. Mr. Stevenson did not find any grievances in Drew's master file that pertained to those issues. Stevenson further reviewed the Cumulative Counseling Summary notes for November 13, 2012 through April 18, 2008, and found no indication that Drew informed his counselor or any counselor of any of these issues.

Sherry Benton, Chairperson with the ARB for the IDOC, reviewed the ARB records for grievances submitted by Plaintiff regarding the 14 issues raised in this case. Benton's search revealed four responses by the ARB to Drew regarding three grievances previously submitted to the ARB through the formal grievance process. The grievances and responses found by Benton pertained to disciplinary issues and Drew's placement on investigation status due to his alleged gang activity. Benton did not find any grievances regarding the 14 issues raised in this case.

## II. Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

7

matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To survive a motion for summary judgment, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. A mere showing that there is "some metaphysical doubt as to the material facts" is not enough. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There must be more than a "mere existence of a scintilla of evidence in support of the [non-moving party's] position" that a jury could reasonably find in the non-moving party's favor. *Anderson*, 477 U.S. at 252. When the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of establishing that the non-moving party has not presented any genuine issue of material fact. See *Celotex*, 477 U.S. at 323. The Court must then "construe the facts and draw all reasonable inferences in the light most favorable to a nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

**III. Analysis**

**A. Exhaustion**

Defendants contend that they are entitled to judgment as a matter of law under the Prisoner Litigation Reform Act ("PLRA") because Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. Pursuant to the PLRA, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

8

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; see also *Pozo v. McCaughtrey*, 286 F.3d 1022, 1023-24 (7th Cir. 2002) ("Unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred."). In *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008), the Seventh Circuit addressed "whether a prisoner plaintiff in a suit for damages governed by the Prison Litigation Reform Act is entitled by the Seventh Amendment to a jury trial on any debatable factual issues relating to the defense of failure to exhaust administrative remedies." The court answered that question in the negative, holding that the district judge must determine as a threshold matter, before proceeding to disposition on the merits (or, in most cases, even discovery), whether "the prisoner has properly exhausted his administrative remedies." *Id*. at 741-42; see also *Hamilton v. Allen*, 2009 WL 395470, at *2 (N.D. Ill. Feb.18, 2009) ("The issue of exhaustion of available administrative remedies is a threshold inquiry for the court").

The purpose of the exhaustion requirement is to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); see also *Jones v. Bock*, 549 U.S. 199, 219 (2007) (noting that exhaustion allows "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record"); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins"). Because failure to exhaust is an affirmative defense, the burden of proof lies with the prison officials, not with the plaintiff. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005).

9

The Seventh Circuit "has taken a strict compliance approach to exhaustion. A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. Accordingly, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Moreover, there is no futility exception to PLRA's exhaustion requirement. See *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999); *Massey v. Helman*, 196 F.3d 727 (7th Cir. 2000). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim. The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures." *Massey*, 196 F.3d at 733. In short, "[e]xhaustion is required even if the prisoner believes his efforts in securing relief will be futile or if the administrative authority has no power to grant the requested relief." *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008) (citations omitted).

As noted above, the PLRA obliges a prisoner who wishes to complain about prison conditions to forestall the filing of a lawsuit "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added); see also *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (failure to follow state rules about the time and content of grievances "means failure to use (and thus to exhaust) available remedies") (emphasis added). While the case law on what constitutes "availability" is not well developed, it is clear that a plaintiff's claims will not be dismissed if "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at

10

809-10; see also *Schaefer v. Bezy*, 336 Fed. App'x 558, 560 (7th Cir. 2009) (noting that "a prison employee who prevents access to a remedy can render that remedy unavailable," and, "in such circumstances, a failure to exhaust would not bar filing suit"); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). A "prison official's failure to respond to a prisoner's claim can render administrative remedies unavailable." *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (citing *Lewis v. Washington*, 300 F.3d 829, 835 (7th Cir. 2002)). The administrative grievance procedure may be deemed exhausted "when prison officials fail to respond to inmate grievances because those remedies ha[ve] become 'unavailable' * * *." *Id.* (quoting *Lewis*, 300 F.3d at 835). Thus, a prisoner fails to properly exhaust the grievance procedure when he does not take a necessary step, but he is not held accountable when he follows the proper procedures and prison officials mishandle the grievance. *Dole*, 438 F.3d at 811.

Defendants argue that Plaintiff failed to exhaust his administrative remedies in regard to the fourteen claims raised in this case. Plaintiff maintains that he followed the grievance procedure that was available to him and that Defendants failed to properly respond to his grievances. Because Defendants seek summary judgment on the issue of exhaustion, the Court will draw all reasonable inferences in the light most favorable to Plaintiff. *Schaefer v. Bezy*, 336 Fed. App'x at 560. Therefore, to be entitled to summary judgment, Defendants "must do more than point to a lack of evidence in the record; rather they must 'establish affirmatively' that the evidence is so one-sided that no reasonable factfinder could find that [the plaintiff] was prevented from exhausting his administrative remedies." *Id*.

The Illinois Department of Corrections ("IDOC") regulations set out the procedures that "offenders" must follow for the "Filing of Grievances" in Illinois Administrative Code § 504.810. Those procedures first require an inmate to attempt to resolve grievances through his

11

counselor. 20 Ill. Admin. Code § 504.810(a). If that step is unsuccessful, the inmate may file a written grievance on a specified form within 60 days of discovery of the incident or problem giving rise to the grievance unless good cause can be shown for extending that period. *Id*. The grievance form must be addressed to the grievance officer and "deposited in the living unit mailbox or other designated repository." 20 Ill. Admin. Code § 504.810(b). The grievance should "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id*.

A grievance officer provides the initial review of grievances. 20 Ill. Admin. Code § 504.830(a). If the grievance officer does not deem the grievance to be without merit, the regulations (20 Ill. Admin. Code § 504.830(d)) direct the officer to consider the grievance and report findings and recommendations to the Chief Administrative Officer ("CAO"), who is defined to be highest ranking official of a correctional facility (typically, the warden). 20 Ill. Admin. Code § 504.802. The CAO then advises the inmate of his or her decision within two months where reasonably feasible under the circumstances. 20 Ill. Admin. Code § 504.830(d).

If the inmate is not satisfied with the CAO's decision, he may appeal in writing to the Director of the IDOC within 30 days. 20 Ill. Admin. Code § 504.850(a). After reviewing the grievance and the responses by the grievance officer and the CAO, the Director decides whether the grievance requires a hearing before the Administrative Review Board ("ARB") or is without merit or can be resolved without a hearing. 20 Ill. Admin. Code § 504.850(b). If the grievance proceeds to a hearing, the ARB submits a written report to the Director who reviews the findings and recommendations of the ARB and makes a final determination within 6 months. 20 Ill. Admin. Code § 504.850(b)-(f).

Here, the parties disagree as to whether Plaintiff sufficiently complied with the IDOC grievance procedure. Defendants claim that they have reviewed the relevant records and determined that Plaintiff cannot satisfy the exhaustion requirement because he failed to follow all three steps of the procedure. Defendants concede that Plaintiff contacted grievance counselor Hosselton, but maintain that Plaintiff failed to satisfy the first two steps of the grievance procedure prior to contacting Hosselton.

Defendants bear the burden to plead and prove the affirmative defense of failure to exhaust. See *Brengettcy*, 423 F.3d at 682. More importantly for purposes of this motion, it is Defendants' burden to establish that Plaintiff has not presented any genuine issue of material fact to warrant a denial of summary judgment. See *Celotex*, 477 U.S. at 323. Defendants have not met their burden at this juncture. Defendants claim that Plaintiff failed to exhaust his administrative remedies by not utilizing the prison's grievance procedure in the proper manner, but Plaintiff maintains that he submitted timely grievances (including handing one to his grievance officer) and that those grievances went unanswered. Plaintiff also maintains that he followed up with a grievance counselor and was assured that she had forwarded his grievances to the ARB. Moreover, the record reflects that Plaintiff was told that he needed to wait to hear from the ARB before proceeding any further, yet Plaintiff never received a response from the ARB. Drawing inferences in favor of Plaintiff (as the Court must do at this stage), Plaintiff submitted grievances that were never addressed by his counselors or by the ARB. Factual questions remain as to whether Plaintiff followed the grievance procedure in the proper order,[1] but the Court cannot resolve those disputes on this record.

---

[1] On this issue, Plaintiff seeks to have it both ways. On one hand, he argues that he was never properly instructed on how to file grievances and that the grievance process was not available to him; on the other hand, he claims to have filed over 50 grievances during his time in the IDOC and points to several successful grievances that he has filed. Based on other evidence in the record, Plaintiff plainly knew how

The lack of documentary evidence that Plaintiff filed grievances in June 2009 and early December 2009 is not dispositive; the Court must credit Plaintiff's statement that he filed the grievances using the methods available to him. See *Henderson v. Brown*, 2009 WL 2496559, at *3 (N.D. Ill. Aug. 11, 2009). Further, the Court also credits Plaintiff's contention that his December 28, 2009 grievance was received and that he was told to wait to hear from the ARB, which he never did. Taken as a whole, the record at this stage of the proceedings permits an inference that – through inadvertence, negligence, or loss – Plaintiff's grievances, which he avers he placed by his cell door for pick-up and gave to Harris, either were not picked up, never made it to the postal system, were lost after being posted, were lost by Harris, or were simply disregarded. See *id*. In view of the disputes of material fact noted above, the Court must deny Defendants' motion for summary judgment on the exhaustion issue (see *Schaefer*, 336 Fed. Appx. at 560 ("Summary judgment may not be used to resolve a swearing contest between litigants")) and set this matter for an evidentiary hearing to resolve the exhaustion question (see *Pavey*, 544 F.3d at 742; *Schaefer*, 336 Fed. Appx. at 561; *Henderson*, 2009 WL 2496559, at *5; *Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009)).

When a case presents a material question of fact as to whether a prisoner has properly exhausted his administrative remedies pursuant to the PLRA, a district judge must "conduct[] a hearing on exhaustion" and "permit[] whatever discovery relating to exhaustion he deems appropriate" before reaching a determination as to whether the prisoner did in fact exhaust his or her available remedies. See *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008); see also

---

to follow the IDOC grievance procedure and had done so successfully with respect to other complaints he had made in the past. Although the Court cannot draw an inference as to whether Plaintiff's grievances about the segregation conditions complied with the requisite filing procedure based solely on the fact of his compliance with the procedure in the past, it seems unlikely that Plaintiff would depart from what he knew to be proper protocol in filing the cell-conditions grievance. However, it seems similarly unlikely that Plaintiff's was not fully cognizant of the procedure for filing grievances.

*Hamilton v. Allen*, 2009 WL 395470, at *2 (N.D. Ill. Feb. 18, 2009) (holding that "[t]he issue of exhaustion of available administrative remedies is a threshold inquiry for the court"). "If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over." *Id*. "If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies." *Id*. Based on the current record, the Court concludes that disputed issues of fact prevent the Court from granting summary judgment to Defendants on the exhaustion issue and further that a *Pavey* hearing is required to resolve the exhaustion issue. The parties are directed to confer and file on the docket by October 1, 2013, a joint status report advising the Court of any discovery that they believe will be necessary in advance of the hearing, a proposed schedule for completing any such discovery, and the parties' mutually available dates for conducting the hearing.

  **B.**  **The Wexford Defendants' Reply in Support of Summary Judgment**

  Rather than filing a separate motion for summary judgment, Defendants Ghosh and Wexford chose to join in and adopt all of the arguments asserted in the motion for summary

judgment filed by Defendants Randles, Ramos, and Hardy.  In other words, until the reply brief, the Wexford Defendants rested entirely on the arguments made by the IDOC Defendants and made no arguments on their own behalf.  However, the Wexford Defendants then requested leave to file a reply brief, in which they sought to interject an entirely-new argument at the reply stage of summary judgment briefing.  Specifically, the Wexford Defendants attempted to raise for the first time in their reply brief the argument that Plaintiff's grievances are "substantially inadequate" because, among other reasons, they do not name particular Wexford actors by name.  The IDOC Defendants did not raise this argument in their opening brief in support of summary judgment.

The Court has now considered the substance of the Wexford Defendants' reply brief and concludes that there is no excuse for the Wexford Defendants' failure to raise this new issue earlier.  The grievance at issue was attached to Plaintiff's initial complaint, and Defendants made it part of the record that they submitted in support of their motion for summary judgment.  It is well-established that arguments raised for the first time in a reply brief are waived.  See *U.S. v. Funds in Amount of $220,030.00 in U.S. Currency*, 2013 WL 599561, at *3 (N.D. Ill. Feb. 14, 2013) (citing *Citizens Against Ruining the Environment v. E.P.A.*, 535 F.3d 670, 676-77 (7th Cir. 2008)); see also *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998) ("It has long been established that arguments in support of a motion that are raised for the first time in a reply brief are waived."); *Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").  Thus, the Court will not consider the untimely argument in ruling on Defendants' motion for summary judgment.

### III.  Conclusion

For the foregoing reasons, the Court denies Defendants' motion for summary judgment [92] and also denies Defendants' motion to strike certain allegations of Plaintiff's Rule 56.1 statement of additional facts [101].  The parties are directed to confer and file on the docket by October 1, 2013, a joint status report advising the Court of any discovery that they believe will be necessary in advance of the hearing, a proposed schedule for completing any such discovery, and the parties' mutually available dates for conducting the hearing.  This case will be set for a status hearing after the Court reviews the parties' joint status report.

Dated:  September 17, 2013                _____
                                                            Robert M. Dow, Jr.
                                                            United States District Judge